FILED
United States Court of Appeals
Tenth Circuit

December 17, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SHAWN JEREMY WAKED; THERESA
IRENE STONE,

     Plaintiffs - Appellants,

v.

KATHLEEN ALEXANDRIA KERR,

    Defendants - Appellees.

No. 24-2064
(D.C. No. 1:22-CV-00596-JB-JMR)
(D. N.M.)

_____

### ORDER AND JUDGMENT*
_____

Before **MATHESON**, **EBEL**, and **EID**, Circuit Judges.
_____

A Financial Industry Regulatory Authority ("FINRA") arbitration panel awarded

Shawn Waked and Theresa Stone $2.9 million against Kathleen Kerr, Jane Terry, and

Timothy Rivera.  Mr. Waked and Ms. Stone moved to confirm the award in the

United States District Court for the District of New Mexico.  Ms. Kerr, Ms. Terry, and

Mr. Rivera filed a cross motion to vacate.  The district court confirmed the award against

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Terry. But it vacated the award as to Ms. Kerr,[1] which Mr. Waked and Ms. Stone appeal.[2] Exercising jurisdiction under 9 U.S.C. § 16(a)(1), we reverse.

## I.  BACKGROUND

### A.  *Factual Background*[3]

Ms. Terry owned Terry Financial Practice ("Terry Financial"), a financial advisory firm, which included Jane Terry & Associates, Summit Investment Group, and Branch 6A1 of Raymond James Financial Services. *Waked v. Kerr*, No. CIV 22-0596, 2024 WL 1539788, at *1 (D.N.M. Apr. 9, 2024). Ms. Kerr and Mr. Rivera were longtime Terry Financial employees. *Id.*

In March 2019, Mr. Waked and Ms. Stone purchased Terry Financial for $1.56 million and formed Maestro Global LLC ("Maestro") to operate the firm. *Id.* at *2. Terry Financial's value stemmed from its clients' goodwill. *Id.* "Accordingly, it was important to Waked and Stone that the clients maintain their goodwill for the firm once it was placed in Waked and Stone's management." *Id.* The purchase agreement

> provided that Terry, Kerr, and Rivera would do nothing to
> interfere with the ongoing viability of the business in Waked
> and Stone's ownership: thus, Terry agree[d] to recommend
> [Waked] to her customers and to do nothing to divert them to

---

[1] Mr. Waked and Ms. Stone settled their claims against Mr. Rivera.

[2] Ms. Terry filed a cross-appeal challenging the district court's order confirming the award against her, *Waked, et al. v. Kerr, et al.*, No. 23-2036, and the appeals were consolidated, *Waked, et al. v. Kerr, et al.*, No. 24-2064. She later stipulated to dismissal, and her appeal ended on January 15, 2025. No. 23-2036, Doc. No. 11150917.

[3] We take these background facts from the district court's opinion and the appellate record.

competing firms and, likewise, Kerr and Rivera agree[d] to, *inter alia*, refrain from diverting the firm's customers to any competing firm.

*Id.* (alterations in original) (citations and quotations omitted).

Ms. Kerr and Mr. Rivera also agreed to work at Maestro. *Id.* Their employment contracts with Maestro ("Employment Contracts") contained an agreement to arbitrate all claims relating to their employment before "one arbitrator," "in accordance with New Mexico Uniform Arbitration Act," and "in Santa Fe, New Mexico." App., Vol. I at 179-95.[4]

Soon after purchasing the firm, Mr. Waked and Ms. Stone learned that (1) Terry Financial "was not as strong as Terry represented," (2) Ms. Kerr and Mr. Rivera had disclosed Maestro's "confidential and proprietary client and business information" to their own newly incorporated financial services company, Kerr Rivera, Inc., and (3) "Kerr, Rivera, and Terry [were] impugning Waked's and Stone's reputations in an effort to divert customers from Maestro Global to the new firm that Kerr and Rivera founded." *Waked*, 2024 WL 1539788, at *3. As a result, Terry Financial's value "decline[d] dramatically." *Id.*

---

[4] Ms. Kerr and Mr. Rivera also signed Financial Advisor agreements ("FA Agreements") with Raymond James, which provided that "Kerr and Rivera would serve as Registered Representatives to conduct securities activities on behalf [of] Raymond James and would be retained as employees by Waked and Stone as owners of the Santa Fe Raymond James branch office." *Waked*, 2024 WL 1539788, at *2. The FA Agreements prohibited Ms. Kerr and Mr. Rivera from soliciting Raymond James's clients. App., Vol. II at 320.

3

In January 2021, Mr. Waked, Ms. Stone, and Maestro commenced FINRA arbitration proceedings against Ms. Kerr, Ms. Terry, and Mr. Rivera. *Id.*

B. ***FINRA Arbitration Rules and Procedures***

FINRA "is an independent, self-regulatory organization . . . established pursuant to Section 15A of the Securities Exchange Act, which 'created a system of supervised self-regulation in the securities industry.'" *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 92 (3d Cir. 2018) (quoting *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005)). FINRA promulgates rules governing the brokerage industry, subject to the Securities and Exchange Commission's approval. *Id.* at 93. FINRA members must comply with FINRA rules, including the arbitration provisions. *Id.*; *see also* FINRA Rule 140 (Applicability); FINRA Bylaws, art IV, § 1 (Membership).

At all relevant times, Mr. Waked, Ms. Stone, Ms. Kerr, Ms. Terry, and Mr. Rivera were FINRA members subject to FINRA's rules. *Waked*, 2024 WL 1539788, at *19. Maestro was not a FINRA member. *Id.*

Rule 13200 in FINRA's Code of Arbitration Procedure for Industry Disputes ("FINRA's Code") requires FINRA members to arbitrate their disputes in a FINRA forum "if the dispute arises out of the business activities of a member or an associated person and is between or among . . . Members and Associated Persons." FINRA Code Arb. P. Indus. Disps. R. 13200(a) (available at https://www.finra.org/rules-guidance/rulebooks/finrrules/13200 [https://perma.cc/8A7Q-QZ2T]).

4

A claimant starts the FINRA arbitration process by filing a statement of claim and a submission agreement, which identifies the parties and confirms FINRA will administer the arbitration.  FINRA notifies respondents by Claim Notification Letter.  Each respondent must complete and return a submission agreement.[5]  The respondent has 45 days to submit an answer, identifying any counterclaims or defenses.  The parties then select the arbitrators for their panel, attend an initial pre-hearing conference, and exchange discovery.  After a hearing, the arbitration panel issues its decision, called the arbitration award.

## C.  *FINRA Arbitration Proceedings*

### 1.  **Statement of Claims**

In January 2021, Mr. Waked, Ms. Stone, and Maestro filed a joint statement of claims against Ms. Kerr, Ms. Terry, and Mr. Rivera with FINRA.  *Waked*, 2024 WL 1539788, at *3.  They alleged various tort and contract claims including fraud, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, breach of the duty of loyalty, solicitation of clients in violation of contractual duties, misappropriation of trade secrets, interference with contractual relationships, and civil conspiracy.  *Id*.  Maestro asserted some of these claims on its own.  *See* App., Vol. I

---

[5] FINRA's standard submission agreement reads: "The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answer, and all related crossclaims . . . to arbitration in accordance with FINRA By-laws, Rules, and Code of Arbitration Procedure."  App. Vol., I at 92.

at 80-89.  Mr. Waked and Ms. Stone likewise asserted claims independently of Maestro.
*Id.*[6]

2. **Submission Agreements**

On March 9, 2021, Ms. Kerr, Ms. Terry, and Mr. Rivera filed modified submission
agreements.  *Waked*, 2024 WL 1539788, at *4.  They added the following language to the
standard agreement: "excluded from this agreement . . . is commitment to arbitrate the
claim of Claimant Maestro Global LLC."  App., Vol. I at 137.  They did not exclude
Mr. Waked and Ms. Stone's claims.  *Id.*

FINRA arbitration staff refused to accept the altered submission agreements.
*Waked*, 2024 WL 1539788, at *4.  Ms. Kerr, Ms. Terry, and Mr. Rivera responded that
FINRA lacked jurisdiction over Maestro's claims and refused "to submit a Submission
Agreement, effectively waiving their rights and submitting [the claims] to arbitration."
App., Vol. I, at 149.  They requested a pre-hearing conference to address their objections.
*Waked*, 2024 WL 1539788, at *41.  During this exchange, they did not object to
arbitrating Mr. Waked and Ms. Stone's claims.  *Id.*

3. **Answer and Counterclaims**

In their answer, Ms. Kerr, Ms. Terry, and Mr. Rivera again "refuse[d] to arbitrate
Maestro's claims against them," claiming Maestro was not "a proper party to [the] action

---

[6] *See, e.g.,* App., Vol. I at 80 (Mr. Waked and Ms. Stone alleging they would not
have signed the purchase agreement but for Ms. Kerr's, Ms. Terry's, and Mr. Rivera's
fraudulent inducement).

6

because it [was] not a FINRA member firm." *Id.* at *4 (quotations omitted). But they did not object to arbitrating Mr. Waked and Ms. Stone's claims. *Id.* at *4, *41.

They also asserted counterclaims against Mr. Waked and Ms. Stone. *Id.* at *9. Ms. Kerr specifically sought damages for constructive discharge, breach of contract, negligent misrepresentation, hostile work environment, and sexual harassment. App., Vol. I at 33. Ms. Kerr, Ms. Terry, and Mr. Rivera did not assert counterclaims against Maestro because they believed FINRA lacked jurisdiction over Maestro.[7]

4. **Pre-hearing Proceedings**

On June 7, 2021, the FINRA panel held a pre-hearing conference to address Ms. Kerr's, Ms. Terry's, and Mr. Rivera's modified submission agreements and their objections to arbitrating with Maestro. *Waked*, 2024 WL 1539788, at *4, *41. All three argued that, because Maestro was not a FINRA Member Firm, "there is no agreement . . . to arbitrate before FINRA," that Maestro has "no standing to be a party in [the] action," and "FINRA has no jurisdiction over Maestro." App. Vol. I at 156-65. Ms. Kerr and Mr. Rivera further argued that their Employment Contracts "require[d] Maestro to pursue any claims against [them] in a forum *other than* FINRA." *Id.* at 162; *see also Waked*, 2024 WL 1539788, at *5. But again, they did not object to arbitrating Mr. Waked and Ms. Stone's claims. The panel overruled the objections and ordered Ms. Kerr, Ms. Terry,

---

[7] In their brief for the pre-hearing conference, Ms. Kerr and the others explained, "[T]his is why Respondents did not assert a Counterclaim against Maestro—only against . . . Waked and Stone." App., Vol. I at 160 n.4.

and Mr. Rivera to submit unmodified submission agreements, which they did. *Waked*,
2024 WL 1539788, at *4-*5.

The parties proceeded to discovery. Ms. Kerr, Ms. Terry, and Mr. Rivera
requested sanctions against Mr. Waked and Ms. Stone for "abuse of the discovery
process." App., Vol. I at 33. The panel granted the motion and ordered Mr. Waked and
Ms. Stone to pay $8,000. *Id.* Ms. Kerr, Ms. Terry, and Mr. Rivera filed a second motion
for sanctions, but, after an evidentiary hearing, the panel denied the motion. *Id.*

5. **Hearing**

"During the arbitration hearing, [Terry,] Kerr and Rivera objected on multiple
occasions to having to arbitrate with Maestro Global, because they asserted that
Maestro Global is not subject to FINRA." *Waked*, 2024 WL 1539788, at *5.[8] They
moved to dismiss Maestro's claim at the outset and renewed their motion to dismiss after
the claimants' case in chief. *Id.* at *6-8. When the FINRA panel asked if a renewed
"motion to dismiss will relate to Maestro Global," App., Vol. I at 207, Ms. Kerr,
Ms. Terry, and Mr. Rivera's counsel responded, "Just Maestro Global." *Id.* The panel
denied the motions to dismiss. *Waked*, 2024 WL 1539788, at *6-8. At no point during

---

[8] *See* App., Vol. I at 212-13 (Defense counsel stating "you were going to hear
argument from [defendants] . . . on the authority of this panel, the jurisdiction of this
panel to arbitrate the (indiscernible) claims brought by Maestro Global LLC," and it "is
not appropriate [for the panel] to be hearing or deciding any claims as against
Maestro Global."); App., Vol. II at 225 (Defense counsel stating during arbitration
closing argument that "Maestro is not entitled to anything in damages against Mr. Rivera
and Ms. Kerr" because its presence in the case was "wrongful and erroneous").

the arbitration hearing did Ms. Kerr, Ms. Terry, or Mr. Rivera object to arbitrating

Mr. Waked and Ms. Stone's claims.

6. **Award**

The FINRA panel found "Kerr, Rivera, and Terry are jointly and severally liable

to Waked and Stone for $2,872,473.00 in compensatory damages," and "jointly and

severally liable for interest on the $2,872,473.00 damages." *Id.* at *9. The panel denied

all of Ms. Kerr, Ms. Terry, and Mr. Rivera's counterclaims and did not award Maestro

damages. *Id.* It did not identify which claims were the basis for the award. *Id.*

### D. *District Court Proceedings*

1. **Motions to Confirm and Vacate**

Mr. Waked and Ms. Stone moved to confirm the arbitration award in district court.

*Id.* at *10. Ms. Kerr, Ms. Terry, and Mr. Rivera cross-moved to vacate, arguing that the

FINRA panel exceeded its authority and disregarded the law when it awarded damages to

Mr. Waked and Ms. Stone individually. *Id.* Mr. Kerr and Mr. Rivera initially contended

that only Maestro asserted claims against them, and that "[b]y bestowing the Award on

. . . Waked and Stone, the panel made 'an end run around the reality that Maestro was

never a proper party' to the arbitration." *Id.* (quoting App., Vol. I at 116). In response

Mr. Waked and Ms. Stone pointed to the multiple tort claims they asserted on their own

behalf independently of Maestro. *Id.* at *12.

Later, Ms. Kerr and Mr. Rivera argued that Mr. Waked and Ms. Stone's individual

claims were all based on their Employment Contracts with Maestro, which contained

distinct arbitration provisions. *Id.* at *14, *17-18. They asserted that the arbitration

9

clauses in their Employment Contracts superseded and displaced any FINRA arbitration obligations.  *Id.* at *14.

Mr. Waked and Ms. Stone said that "[w]hatever theoretical merit there might have been to such an argument, if timely made, the argument is now irrelevant because Kerr and Rivera . . . never objected to arbitrating Waked and Stone's claims."  App., Vol. II at 360.

## 2.  **District Court Order**

In a 167-page order, the district court confirmed the award against Ms. Terry and vacated the award against Ms. Kerr.  The district court determined:

1.  Ms. Kerr's challenge to the FINRA panel's jurisdiction to arbitrate Maestro's claims raised arbitrability issues that the parties did not delegate to the FINRA arbitrators;

2.  Ms. Kerr preserved her objection to the FINRA panel's jurisdiction over Maestro's claims;

3.  Mr. Waked and Ms. Stone's claims against Ms. Kerr arose out of her Employment Contract with Maestro;

4.  The non-FINRA arbitration provision in Ms. Kerr's Employment Contract bound Mr. Waked and Ms. Stone;

5.  The non-FINRA arbitration provision in Ms. Kerr's Employment Contract superseded and displaced the parties' FINRA arbitration obligations.

The district court concluded that the FINRA panel exceeded its authority by requiring Ms. Kerr to arbitrate claims over which it lacked jurisdiction.  *Waked*, 2024 WL 1539788, at *54.  The court did not address Mr. Waked and Ms. Stone's argument that Ms. Kerr never objected to arbitrating their claims.

Mr. Waked and Ms. Stone timely appealed.

10

## II. DISCUSSION

On appeal, Mr. Waked and Ms. Stone argue that "Kerr waived any objection to arbitrating with Waked and Stone when she expressly, repeatedly, and consistently agreed to submit to arbitrating with them." Aplt. Br. at 25. We agree.

### A. *Standard of Review*

On an appeal of a district court's order confirming or vacating an arbitration award, we review factual findings for clear error and legal conclusions de novo. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947-49 (1995). Our review here begins and ends with waiver.

### B. *Legal Background*

We apply traditional rules of waiver and estoppel to arbitration proceedings. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007). "The Supreme Court has observed that to the extent parties 'forcefully object[] to the arbitrator's deciding their dispute,' they preserve their objection even if they follow through with arbitration." *Id.* at 1148 (quoting *First Options*, 514 U.S. at 946) (alterations in original). "On the other hand, many courts have held that, absent an explicit statement objecting to the arbitrability of the dispute, a party cannot 'await the outcome and then later argue that the arbitrator lacked authority to decide the matter.'" *Id.* at 1149 (quoting *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000)). "It would be unreasonable and unjust to allow [a party] to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months." *Id.* (quoting *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983)) (alterations in original).

11

Thus, a party may waive its arguments against arbitrating claims by "fully participat[ing] in arbitration without any relevant objection." *Id.*

In *Lewis v. Circuit City Stores*, *Inc.*, after an arbitration panel denied his claims on the merits, Mr. Lewis attempted to reassert the same claims in district court, arguing his arbitration agreement was unenforceable. *Id.* at 1143-45. We held Mr. Lewis waived this argument by failing to raise it "during arbitration." *Id.* at 1150. The record revealed "only a general complaint about having to arbitrate and [was] devoid of an objection to any legal aspect of the arbitration agreement or to the enforceability of the agreement generally." *Id.* "Because Lewis never adequately objected in arbitration to the arbitrability of his claims . . . he waived his opportunity to do so and [was] estopped from raising such issues [on appeal.]" *Id.*[9]

## C. *Analysis*

Ms. Kerr waived any objections in district court and on appeal against arbitrating Mr. Waked and Ms. Stone's claims because she failed to object in the FINRA arbitration.

---

[9] *See also Hicks v. Bank of Am.*, *N.A.*, 218 F. App'x 739, 746 (10th Cir. 2007) (unpublished) (holding that a party waived their objection to arbitrating by "vigorously participating in the arbitration," asserting counterclaims, and arguing, in response to a motion to stay, that the issue was arbitrable); *Integrated Assocs. of Denv., Inc. v. Pope*, No. 21-1019, 2022 WL 2388420, at *7 (10th Cir. July 1, 2022) (unpublished) ("We conclude [Appellant] waived their arbitrability argument by not raising it before the arbitrator . . . ."). We cite these unpublished opinions for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Before the FINRA panel, Ms. Kerr repeatedly objected to arbitrating Maestro's claims, but not Mr. Waked and Ms. Stone's claims. She excluded Maestro's claim from her original submission agreement, but not Mr. Waked and Ms. Stone's claims. She argued that the FINRA panel lacked jurisdiction over Maestro's claims, but did not mention Mr. Waked and Ms. Stone's claims.

In her pre-hearing conference briefing, Ms. Kerr again objected to the FINRA panel's jurisdiction over Maestro's claims. She argued that because Maestro was not a FINRA member "there is no agreement with [Defendants] to arbitrate before FINRA," and Maestro thus had "no standing" to bring claims in a FINRA forum. App. Vol. I at 156-65. As the district court acknowledged, "These arguments do not contest the arbitrability or FINRA jurisdiction as to Waked and Stone's claims against the defendants; these arguments only go to Maestro Global's position in the arbitration and litigation." *Waked*, 2024 WL 1539788, at \*5.

Ms. Kerr's objections during the arbitration hearing were likewise limited to Maestro's claim. *See supra* n.8. Not only did Ms. Kerr fail to object, she "vigorously participated" in the FINRA arbitration with Mr. Waked and Ms. Stone. *See Hicks*, 218 F. App'x at 746. She asserted counterclaims against Mr. Waked and Ms. Stone, seeking over $280,000 in compensatory damages, punitive damages, and attorney fees and costs. During discovery, Ms. Kerr requested and the panel granted $8,000 in sanctions, and she later moved for sanctions again. By failing to object in the hearing and instead "fully participat[ing] in arbitration without any relevant objection," she waived her arguments that she has attempted to make in district court and on appeal against

13

arbitrating Mr. Waked and Ms. Stone's claims in the FINRA forum. *Lewis*, 500 F.3d at 1149; *see Pope*, 2022 WL 2388420, at *7.

On appeal, Ms. Kerr fails to identify any place in the record where she made an "explicit statement objecting to [arbitrating]" Mr. Waked and Ms. Stone's claims before the FINRA panel. *Lewis*, 500 F.3d at 1149 (quoting *AGCO*, 216 F.3d at 593). Instead, she argues her modified submission agreement "belies [Mr. Waked and Ms. Stone's] position" that she never objected to arbitrating their claims. Aplee. Br. at 34. Ms. Kerr states, "[in her modified submission agreement] Kerr protested both the arbitration of the 'claim of Claimant Maestro Global, LLC against [her]' and further refused to consent 'to arbitrate with Maestro Global, LLC.'" *Id.* (quoting App., Vol. I at 137) (alterations in original). But Ms. Kerr fails to explain how these objections about Maestro constituted an objection to arbitrating Mr. Waked and Ms. Stone's claims.[10]

Ms. Kerr spends the rest of her appellate brief arguing that Mr. Waked and Ms. Stone's claims arose out of her Employment Contract with Maestro, and that the Employment Contract arbitration clause supersedes and displaces FINRA's arbitration

---

[10] To avoid waiver, Ms. Kerr insists that when she objected to arbitrating with Maestro during the FINRA proceedings, she was objecting to participating in the FINRA process generally. *See* Oral Arg. at 18:47-55. But she did not tell that to the FINRA panel. Instead, as recounted above, she repeatedly objected to arbitration with Maestro. Indeed, she even said that she "did not assert a Counterclaim against Maestro—only against . . . Waked and Stone"—because the panel lacked jurisdiction over Maestro. App., Vol. I at 160 n.4. And when asked if a renewed motion to dismiss the arbitration would relate solely to Maestro's claims, Ms. Kerr's counsel responded, "Just Maestro." App., Vol. I at 207.

rules. But even assuming these arguments were correct, she failed to raise them during the FINRA arbitration proceedings.

## III. **CONCLUSION**

We reverse the district court's judgment regarding Mr. Waked and Ms. Stone's award against Ms. Kerr and remand with instructions to grant Mr. Waked and Ms. Stone's motion to confirm the award as to Ms. Kerr.[11]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[11] We grant the motion to file Volume 4 of the joint appendix under seal.