**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KERRY R. HICKS,

      Plaintiff-Appellee,

  v.

BANK OF AMERICA, N.A,

      Defendant-Appellee,

  and

THE CADLE COMPANY; BUCKEYE
RETIREMENT CO., LLC, LTD.;
WILLIAM E. SHAULIS; DANIEL C.
CADLE,

      Defendants-Appellants.

No. 05-1399
(D.C. No. 04-CV-2616-(ZLW))
(D. Colo.)

KERRY R. HICKS,

      Plaintiff-Appellee,

  v.

BANK OF AMERICA, N.A,

      Defendant,

  and

THE CADLE COMPANY; BUCKEYE
RETIREMENT CO., LLC, LTD.;
WILLIAM E. SHAULIS; DANIEL C.
CADLE,

      Defendants-Appellants.

No. 05-1525
(D.C. No. 04-CV-2616-(ZLW))
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

We have consolidated these appeals for purposes of disposition. See Fed. R. App. P. 3(b)(2). Appellants (the "Cadle defendants") challenge orders of the district court confirming an arbitration award. This case presents three issues: (1) whether the Cadle Company was properly made a party to the arbitration; (2) whether the arbitrator manifestly disregarded Tennessee abuse-of-process law in awarding damages to Kerry Hicks; and (3) whether Bank of America, N.A. ("BOA") is properly dismissed from the case. After first establishing that we have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(D), we apply the high standard of review applicable to arbitration decisions, under which standard we reject each of Cadle defendants' merits arguments and **AFFIRM**.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**

At the outset, we are confronted by a controversy concerning the proper content of the record on appeal. Plaintiff-appellee Kerry Hicks contends that five volumes of the Cadle defendants' appendix were not before the district court when it reached its decision on confirmation, and should therefore be excluded. These allegedly improper materials include pleadings filed in the arbitration, the rules and procedures followed by the arbitrator, exhibits filed with the arbitrator, and a transcript of the arbitration proceedings.

Our review persuades us that the complete arbitration hearing transcript was never part of the district court record. As such, we will not consider it as part of the record on appeal. See Allen v. Minnstar, Inc., 8 F.3d 1470, 1473-76 (10th Cir. 1993). We will consider, however, those portions of the transcript and the arbitration exhibits that were specifically provided to the district court. See id. at 1475-76.

**A**

The pertinent facts are these. Hicks was the founder and president of Specialty Care Network ("SCN"), a physician practice management business. SCN entered into a revolving loan and security agreement with BOA. In November 1999, SCN sought an additional loan of $3,550,000 from BOA in order to raise venture capital to restructure its business and to pay off its revolving line of credit. BOA was unwilling to advance any more funds to SCN, but it was

willing to loan the money to SCN's officers, with the understanding the funds would then be passed through to the company.

SCN's officers agreed to borrow the $3,550,000 from BOA and to use the funds for restructuring. The officers orally agreed with Walker Choppin, a Senior Vice President of BOA, to a division of responsibility for repayment of this loan as follows:

(1) Hicks, $2 million, individually;

(2) Patrick Jaeckle, $1 million, individually;

(3) Hicks and Jaeckle, $350,000, jointly; and

(4) David Hicks and D. Paul Davis, $100,000 each, individually.

With only a few hours left to close the transaction, Choppin faxed a promissory note to Hicks. To Hicks' surprise, however, the terms of the note diverged from the oral agreement, making Hicks and Jaeckle jointly and severally liable for the full amount of the loan. Choppin assured Hicks that his liability would not extend beyond the $2 million previously agreed-upon. He further explained that BOA needed Hicks' signature to satisfy internal BOA processing requirements until Jaeckle's collateral had been perfected. Hicks and Jaeckle signed the note as drafted at the eleventh hour, on December 31, 1999.

The note contained the following integration provision:

NOTICE OF FINAL AGREEMENT. THIS WRITTEN PROMISSORY NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED

-4-

BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

The note also contained a provision that required binding arbitration of:

ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT[.]

The bridge loan to SCN worked as anticipated:  SCN paid off the remainder of the BOA revolver, and restructured its business as Health Grades.com, Inc. Hicks paid the $2 million he had agreed to pay under the note, and David Hicks and Davis each paid off their $100,000 obligations.  Yet not all was smooth sailing – Jaeckle did not pay his obligation under the note prior to the due date, and neither Hicks nor Jaeckle paid the $350,000 joint obligation when it became due.  The note was renewed twice on essentially the same terms, eventually reflecting a remaining balance of $1 million and a maturity date of September 30, 2000.[1]  Hicks claims that Choppin assured him each time that he was not actually liable for the $1 million attributed to Jaeckle, and that his name would be removed as soon as BOA had perfected its interest in Jaeckle's collateral.

---

[1] Further references to "the note" in this decision may encompass the original and renewal notes, as required by context.

**B**

Jaeckle did not pay the note, and BOA did not perfect a security interest in his collateral. Instead, on October 2002, BOA charged off the note and sold it to the Cadle Company ("Cadle"), as part of a distressed loan pool. After Cadle began collection efforts, Hicks' attorney wrote to BOA's attorney demanding that BOA inform Cadle that Hicks had been released from liability on the note. Hicks' attorney also wrote to Cadle advising it that Hicks was not liable.

BOA's counsel wrote to Cadle on July 24, 2003, reiterating its position that Hicks was not liable on the note. The letter referred to "ample information" in BOA's loan file at the time the loan was sold showing that BOA understood Hicks to be free of liability. Notwithstanding BOA's representations, or the note's arbitration provision, defendant Buckeye Retirement Co., LLC ("Buckeye"), an alter ego of Cadle, sued Hicks and Jaeckle on September 29, 2003 in federal district court in Tennessee, seeking to collect on the note. On October 23, 2003, Hicks moved to stay the Tennessee action, and initiated arbitration proceedings in Denver, seeking tort damages against Cadle and Buckeye for abuse of process. BOA ultimately repurchased the note.

**C**

On September 27, 2004, while the arbitration was pending, William Shaulis, Buckeye's manager, wrote a letter to the attorneys general of Tennessee and Colorado, suggesting that Hicks be investigated for bank fraud. The letter

stated that "[Hicks], in our opinion, admit[ted] to bank fraud as his defense to a large commercial note that we were trying to collect after we purchased that note from a bank." The letter informed the Tennessee attorney general that if he reviewed the relevant banking laws, he would "have a slam-dunk case because of the court filings, as well as Hicks' sworn deposition testimony."

**D**

On December 3, 2004, Hicks filed a complaint in Colorado state court against BOA and Cadle defendants asserting several tort claims. BOA removed the complaint to federal district court. On January 14, 2005, the district court stayed the action pending the outcome of the arbitration.

The arbitrator held hearings and subsequently entered a decision on Hicks' claims against Cadle defendants and BOA. He dismissed the claims against BOA, finding that "Bank of America did nothing in this case to merit an award against it." Terming the filing of the Tennessee lawsuit "offensive" in light of the note's arbitration clause, the arbitrator awarded Hicks attorneys' fees incurred in defending against that suit. The arbitrator further awarded Hicks $400,000 against Cadle and Buckeye, jointly and severally, in light of the their "callous[]," "shocking," and "outrageous" conduct in attempting to collect on the note notwithstanding BOA's letter explaining Hicks' non-liability. He subsequently

entered a "final arbitration award," which upheld the prior award and applied the Tennessee prejudgment interest statute to the attorneys' fee portion of the award.[2]

Hicks filed a motion to confirm the arbitrator's award, in which BOA joined. Cadle defendants opposed confirmation. On July 28, 2005, the district court entered an order (1) confirming that portion of the arbitrator's award that released BOA from liability, and (2) dismissing BOA from the case. On October 26, 2005, the district court entered an order confirming the remainder of the April 28, 2005, final arbitration award. In its second order, the district court deferred the entry of final judgment, noting that "other claims remain pending between the parties in arbitration." It concluded, however, that the arbitration award was "final" for purposes of confirmation. Cadle defendants have separately appealed from both the district court's order of July 28, 2005 (No. 05-1399), and its order of October 26, 2005 (No. 05-1525).

## II

Hicks has challenged our jurisdiction to entertain this appeal. Specifically, he argues that because there are claims still pending before the arbitrator, the arbitrator's award (and, hence, the order confirming it) cannot yet be final. The Federal Arbitration Act's ("FAA") appeal provision provides, however, that "[a]n appeal may be taken from . . . an order . . . confirming or denying confirmation of

---

[2] The arbitrator made reference in this final arbitration award to "the $444,000 amount" of his prior award. This appears to be a typographical error.

an [arbitrator's] award or partial award." 9 U.S.C. § 16(a)(1)(D) (emphasis added). Hicks' position effectively reads the words "or partial award" out of § 16(a)(1)(D). Under the FAA, an arbitration award that does not resolve all controversies between the parties may be confirmed, and an appeal taken from that confirmation. See Hewlett-Packard Co. v. Berg, 61 F.3d 101, 104 (1st Cir. 1995). Hicks' related argument that appellate jurisdiction does not attach until the district court enters judgment is also unavailing. The First Circuit explained in Berg that a confirmation order is final for purposes of appeal, even absent the entry of a final judgment satisfying the usual prerequisites of 28 U.S.C. § 1291 and Fed. R. Civ. P. 58, because "Congress directed in the statute governing arbitration-related appeals that such an 'order' confirming an award should be immediately appealable. The reason is a pro-arbitration policy designed to expedite confirmation of arbitration awards." Hewlett-Packard, 61 F.3d at 104 (citation omitted).

It must be acknowledged that Cadle defendants' first appeal was taken from an order not final within the meaning of § 16(a)(1)(D), because the district court had not yet confirmed either a full "award or a partial award." The October 26, 2005, order, however, confirmed the arbitrator's "final arbitration award" of April 28, 2005 in its entirety. The second order was therefore an appealable order within the meaning of § 16(a)(1)(D), and the entry of that order caused the first case to ripen for purposes of appellate review. See Jackson v. Volvo Trucks N.

-9-

Am., Inc., 462 F.3d 1234, 1238 (10th Cir. 2006). As such, we now have jurisdiction to hear both cases in this consolidated appeal.

## III

"In reviewing the district court's confirmation of the arbitration award, we review its factual findings for clear error and questions of law de novo." Sheldon v. Vermonty, 269 F.3d 1202, 1206 (10th Cir. 2001). "[W]e must give extreme deference to the determination of the [arbitrator] for the standard of review of arbitral awards is among the narrowest known to law." Id. (quotation omitted). Mere errors in the arbitrator's factual findings do not justify review or reversal. Id.

The FAA recognizes only a few grounds on which the district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"We have also recognized a handful of judicially created reasons that a district [court] may rely upon to vacate an arbitration award, and these include violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing." Sheldon, 269 F.3d at 1206 (quotation omitted). "Outside of these limited circumstances, an arbitration award must be confirmed." Id. "This Court has characterized the manifest disregard standard as willful inattentiveness to the governing law. Manifest disregard of the law clearly means more than error or misunderstanding with respect to the law." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463 (10th Cir. 1995) (citations and quotations omitted). "Even erroneous interpretations or applications of law will not be disturbed." Id.

## A

Cadle first contends that the arbitrator manifestly disregarded the law and imperfectly executed his powers by entering an award against Cadle, a non-party to the note. Recognizing that the arbitrator's decision is anything but a model of clarity either generally or as to this issue, the decision indicates the arbitrator believed Buckeye to be a strawman for purposes of assigning liability. Cadle contends that the note's arbitration provision required arbitration only of "any controversy or claim between or among the parties hereto." As Buckeye purchased the note and was solely responsible for filing the Tennessee action, Cadle argues that it should not have been compelled to arbitrate. Cadle further

-11-

argues that to the extent the arbitrator's finding of joint and several liability presumes Buckeye's corporate veil should be pierced, some minimal piercing analysis was required.

Cadle's position faces two insurmountable hurdles. First, there was abundant evidence before the arbitrator that Cadle and Buckeye operated as alter-egos. By its terms, the note was binding upon BOA's successors and assigns, one of which was Cadle, the original purchaser of the note from BOA. Although an arms-length sale or assignment of the note might have divested a prior holder of liability for its successor's actions, there is sufficient evidence in the record that Cadle and Buckeye did not operate at arms length. Accordingly, we hold that the arbitrator's decision did not reflect manifest disregard of the law, even absent clear findings on the grounds for Cadle's liability.

Second, and more importantly, Cadle vigorously participated in the arbitration, advancing a counterclaim against Hicks and joining in BOA's motion to stay pending completion of the arbitration. As the district court further noted, in their "Joinder in Bank of America's, N.A., Motion To Stay The Action Pending Completion of Ongoing Arbitration (Joinder)," Cadle defendants asserted that this action must be arbitrated because the arbitration clause in the note clearly encompassed all of the issues and claims Hicks asserted. Cadle therefore waived its objection to arbitration and is estopped from arguing that the arbitrator lacked personal jurisdiction to enter an award against it. See Nat'l Wrecking Co. v. Int'l

-12-

<u>Bhd. of Teamsters Local 731</u>, 990 F.2d 957, 960 (7th Cir. 1993) ("Failure to present an issue before an arbitrator waives the issue in an enforcement proceeding.").

**B**

Cadle defendants next argue that the arbitrator evidently and manifestly disregarded Tennessee law in entering the award. The arbitrator's award was based on abuse of process. Delphic as his decision is, the arbitrator's finding of abuse of process appears to rest on three grounds: (1) Cadle defendants were on notice that BOA believed Hicks was not liable on the note, but attempted to collect from him regardless; (2) Cadle defendants filed suit against Hicks despite the note's arbitration provision; and (3) Cadle defendants wrote baseless and harassing letters to the attorneys general of Colorado and Tennessee claiming Hicks had committed bank fraud.

Under Tennessee law, "a plaintiff must establish by evidence two elements to recover for abuse of process: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." <u>Givens v. Mullikin ex rel. Estate of McElwaney</u>, 75 S.W.3d 383, 400 (Tenn. 2002) (quotations omitted). "The test as to whether process has been abused is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the

party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." Id. at 401 (quotation omitted).

Cadle defendants first find manifest disregard of the law in the arbitrator's alleged failure to apply Tennessee's parol evidence rule. They contend that the note's integration clause prohibited reliance on any prior or contemporaneous oral agreement. Therefore, they claim, the arbitrator should have found as a matter of Tennessee law that Hicks was liable for the full balance on the note, notwithstanding any "secret oral side agreement" he claims to have reached with Choppin. As such, they argue they acted properly in attempting to collect on the note, and could not be liable to Hicks for abuse of process.

Hicks responds that under Tennessee law, the statute of frauds is not a defense to a tort action. The cases Hicks cites, however, concern fraudulent inducement or fraudulent misrepresentation going to the existence of the contract itself. See, e.g., Brungard v. Caprice Records, Inc., 608 S.W.2d 585, 588 (Tenn. App. 1980). The arbitrator specifically found in his award that BOA did not defraud Hicks in obtaining the loan in question, and so these cases do not control. The record is unclear with regard to the arbitrator's reliance on evidence of the oral agreement in finding that Hicks was not liable on the note at the time Cadle defendants attempted to collect from him; the award makes no determination as to Hicks' ultimate liability on the note. Assuming arguendo that Cadle defendants are correct that the arbitrator erroneously applied the parol

-14-

evidence rule and side-stepped the note's integration clause, a finding that Hicks was not liable on the note is not a predicate to finding that Cadle defendants engaged in abuse of process.

Rather, the core basis for the award is the arbitrator's finding that Cadle defendants abused process by haling Hicks into federal district court in Tennessee, despite the fact that the note contained an unambiguous arbitration provision. Instead of acknowledging that Hicks' liability on the note was an open question, and that further investigation or, at a minimum, arbitration were warranted, Cadle defendants "went [forward] with their collection efforts in Court because the arbitration clause gave [them] no pause." Although it is not the only possible reading, the arbitrator's decision can be read to reference the uncertainty about Hicks' liability primarily to establish Cadle defendants' ulterior motive in bringing the Tennessee action, namely to harass Hicks. This interpretation is bolstered by the arbitrator's decision on Cadle defendants' motion for summary disposition, which acknowledged the role of the parol evidence rule, but did not accord it controlling weight.

Cadle defendants next contend that the award was not based "on any perversion or misdirection of the litigation process." If Hicks were in fact liable on the note, they contend they could not have "directed [the litigation process] outside of its lawful course to the accomplishment of an objective other than that for which it is provided." This misstates the required showing to succeed on an

abuse of process claim in Tennessee – a showing of some legal basis for filing suit or otherwise using the judicial process is not a defense where (1) there was an ulterior motive; and (2) the process used was improper. See Givens, 75 S.W.3d at 400 ("[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."). Although Cadle defendants' liability for abuse of process in attempting to collect from Hicks may be a close call, our review is limited to whether the arbitrator manifestly disregarded the law. Under that standard, we have no basis for vacating the award.

**C**

Cadle defendants next argue that the arbitrator imperfectly exercised his powers by failing to make a final and definite award on the issue of whether Hicks was actually liable on the note. See 9 U.S.C. § 10(a)(4). As discussed supra, however, the arbitrator's finding that Cadle defendants engaged in abuse of process did not require him to determine whether Hicks was liable on the note. He merely needed to determine whether filing suit on the note, rather than pursuing arbitration, was an abuse of process. The arbitrator reached a final and definite decision on this issue. We therefore reject this argument.

**D**

Cadle defendants' final challenge to the merits of the arbitrator's decision is that he "improperly included in his Award, and as a basis for his award of damages, the issue of Buckeye's September 2004 letter to two state Attorneys General reporting a potential fraud which [the arbitrator] found to be beyond all norms of debt collection activity." They contend that this issue was not properly before the arbitrator, because it was explicitly reserved for later determination. Cadle defendants' argument that the arbitrator reserved all consideration of the bank fraud issues to a later proceeding, and thus should not have used them as even a partial basis for making a determination on Hicks' abuse of process claim, finds at least partial support in the record. Yet even assuming the arbitrator did improperly rely on the bank fraud allegations to find abuse of process, he did not manifestly disregard the law when he provided sufficient alternate grounds for his determination, namely Cadle defendants' decision to file suit in Tennessee.

**IV**

On appeal Cadle defendants argue for the first time that the procedure used to select the arbitrator was violated, insofar as they were not properly consulted before he was selected, and that the arbitrator was biased due to a prior association with Hicks' counsel. Neither of these arguments were presented to the district court, and we will not consider them on appeal. See Smith v. Rogers

Galvanizing Co., 128 F.3d 1380, 1385-86 (10th Cir. 1997) ("Generally, we will not consider an issue that was not raised and resolved in the trial court.").

## V

Cadle defendants appealed from the district court's order No. 05-1399. That order confirmed that portion of the arbitrator's award finding that there was no basis for any award against BOA, and dismissed BOA from the action accordingly. In their brief Cadle defendants have not raised any arguments opposing confirmation of this aspect of the award. "[T]he failure to raise an issue in an opening brief waives that issue." Silverton Snowmobile Club v. U.S. Forest Serv., 433 F.3d 772, 783 (10th Cir. 2006) (quotation omitted). As such, the portion of the first district court order confirming the award as to BOA and dismissing BOA from the case is affirmed.

## VI

The orders of the district court are **AFFIRMED**. All pending motions are **DENIED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

-18-