**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KERRY R. HICKS,

      Plaintiff-Appellee/
      Cross-Appellant,

v.

THE CADLE COMPANY; BUCKEYE
RETIREMENT CO., LLC, LTD.;
WILLIAM E. SHAULIS; DANIEL C.
CADLE,

      Defendants-Appellants/
      Cross-Appellees.

Nos. 08-1306, 1307,
1429 & 1435
(D.C. No. 1:04-CV-02616-ZLW-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **PORFILIO**, and **HARTZ**, Circuit Judges.

These appeals and cross-appeal are from the district court's confirmation of

an arbitration award and vacatur of post-award, prejudgment interest. The Cadle

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Company; Buckeye Retirement Co., LLC, LTD. (Buckeye); William E. Shaulis; and Daniel C. Cadle argue that (1) the arbitrator lacked jurisdiction; (2) they were denied their right to a jury trial; (3) the arbitrator's decision was made in manifest disregard of the law and in violation of public policy; and (4) the district court improperly reviewed the arbitrator's decision. In case number 08-1435, Kerry R. Hicks argues that the district court erred in vacating the arbitrator's award of post-award, prejudgment interest. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(D). We affirm the confirmation of the arbitration award and reverse the vacatur of post-award, prejudgment interest.

## I. BACKGROUND

This case has a lengthy history, which we summarize only briefly now. For a more detailed background discussion, see our prior decision in *Hicks v. Bank of America*, *N.A.*, 218 F. App'x 739, 741-44 (10th Cir. 2007).

The underlying dispute concerns collection activities on a promissory note. In December 1999, Mr. Hicks, the Chief Executive Officer of Specialty Care Network, Inc., and Patrick Jaeckle, another corporate officer, borrowed $3,350,000 from Bank of America. Under the written terms of the note, both were jointly and severally liable for the full amount. Mr. Hicks, however, had entered into an oral side agreement with a Bank of America employee, limiting his liability to $2,350,000 and agreeing that his signature on the note for the full amount was an accommodation until Bank of America could perfect its interest in

Mr. Jaeckle's collateral for the other $1,000,000. The note contained an arbitration clause, providing that "any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to" the note or any related agreement "including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act." Aplt. App., Vol. I at 110 (capitalization omitted).

In January 2000, Mr. Hicks paid $2,000,000 on the note. Bank of America renewed the note for the remaining $1,350,000. Later, Specialty Care Network paid $350,000. The note was again renewed; this time for $1,000,000. Bank of America never perfected a security interest in Mr. Jaeckle's collateral, and he never paid on the note.

In October 2002, Bank of America sold the $1,000,000 note to The Cadle Company, which began collection efforts. Bank of America informed The Cadle Company that it had concluded that Mr. Hicks was not obligated under the note. In September 2003, Buckeye, an alter ego of The Cadle Company, sued Mr. Hicks in Tennessee federal district court to recover the balance due on the note. On October 23, Mr. Hicks initiated arbitration proceedings in Colorado against Bank of America, Buckeye, and The Cadle Company, contending that Bank of America committed fraud in connection with the sale of the $1,000,000 note and Buckeye and The Cadle Company violated the arbitration clause by filing suit in Tennessee and engaging in tortious collection activities.

In December 2003, Bank of America repurchased the $1,000,000 note. The Tennessee lawsuit was dismissed. Bank of America sold the note to a third party, acknowledging that Mr. Hicks had been released from liability under the note.

On September 27, 2004, while arbitration was pending, Mr. Shaulis, Buckeye's manager, wrote letters to the Tennessee and Colorado attorneys general suggesting that Mr. Hicks should be investigated for the crime of bank fraud. On December 3, Mr. Hicks filed suit against Bank of America and the defendants in Colorado state court. He asserted the claims pending in arbitration and added new claims against defendants based on the letters for abuse of process, defamation, and intentional infliction of emotional distress. Bank of America removed the suit to federal district court and moved to stay the action pending arbitration. Defendants joined the motion for stay, noting that the action must proceed to arbitration as the note's arbitration clause encompassed nearly all of the claims asserted by Mr. Hicks. Mr. Hicks opposed a stay, stating the note did not include his claims against defendants that were based on the letters, no defendants held the note at the time of the letters, and the parties never agreed to arbitrate these claims.

On January 13, 2005, Mr. Hicks filed an amended complaint asserting only the claims against defendants. On January 14, the district court stayed the lawsuit pending completion of arbitration.

On January 25, 2005, Arbiter James D. Hinga determined that he had jurisdiction over the claims in the amended complaint, but he bifurcated them. He directed that in the first phase of arbitration, he would hear claims concerning the filing of the Tennessee lawsuit and in the second phase of arbitration, he would hear claims based on the allegations of bank fraud in the letters.

On March 23, 2005, in clarifying the stay pending arbitration, the district court determined that all defendants voluntarily submitted to the arbitrator's jurisdiction for resolution of the claims in Mr. Hicks's amended complaint. The court determined that defendants' prior assertion that those claims must be decided in arbitration amounted to consent to the jurisdiction of the arbitrator to decide the claims in the amended complaint. Additionally, the court decided that judicial estoppel precluded defendants from claiming that they were not subject to the jurisdiction of the arbitrator for resolution of those claims.

On April 28, 2005, in the first phase of arbitration, Arbiter Hinga awarded Mr. Hicks $400,000 in damages, plus attorney's fees. The Arbiter decided that The Cadle Company and Buckeye improperly filed suit in Tennessee when the note's arbitration clause provided for arbitration and improperly attempted to collect on the note even though Bank of America had explained to The Cadle Company and Buckeye that Mr. Hicks was not liable. Additionally, Arbiter Hinga found that it was outrageous conduct to send letters to the attorneys general accusing Mr. Hicks of bank fraud.

On October 26, 2005, the district court confirmed this award under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, rejecting The Cadle Company's and Buckeye's arguments that the arbitrator exceeded his authority and that the arbitration award manifestly disregarded the law. The court, however, deferred entering final judgment because other claims remained pending in arbitration, but concluded that the award was final for purposes of confirmation. Defendants appealed, and we affirmed. *See Hicks*, 218 F. App'x at 749.

Before the second phase of arbitration was completed, Arbiter Hinga passed away. A new arbiter, Arbiter Frank N. Dubofsky, was selected. The second phase hearing was held in October 2006. After the hearing, Arbiter Dubofsky allowed Mr. Hicks to amend his statement of claims to conform to the evidence presented that defendants had made fourteen additional communications concerning bank fraud and perjury by Mr. Hicks.

On May 14, 2007, Arbiter Dubofsky decided in favor of Mr. Hicks on his defamation and emotional distress claims and against him on the abuse of process claim. The Arbiter stated that by the referring of the letters to the attorneys general, along with the other communications from Mr. Shaulis and Mr. Cadle to various governmental units from 2004 to 2006, all accusing Mr. Hicks of illegal conduct, defendants had "engaged in a relentless campaign to defame, intimidate and harass Hicks by raising alleged bank fraud, perjury and other serious allegations against" him. Aplt. App., Vol. I at 78. Finding no bank fraud or

perjury by Mr. Hicks and that defendants never had a reasonable belief that either occurred, the arbitrator concluded that any claim of bank fraud or perjury was to retaliate against and intimidate Mr. Hicks. Further, the arbitrator found that defendants caused Mr. Hicks severe emotional distress by trying to have him criminally indicted and financially destroyed. Because defendants acted intentionally, willfully, wantonly, and maliciously in order to harm Mr. Hicks, the arbitrator decided that an award of punitive damages was warranted. In his final award, on June 18, Arbiter Dubofsky awarded Mr. Hicks (1) $750,000 in compensatory damages and $950,000 in punitive damages against Mr. Cadle, The Cadle Company, and Buckeye; and (2) $200,000 in compensatory damages and $10,000 in punitive damages against Mr. Shaulis. In addition, the arbitrator awarded prejudgment interest on the compensatory damages from September 27, 2004 and post-award, prejudgment interest from the dates of the final arbitration awards through confirmation.

On July 23, 2008, the district court ruled on Mr. Hicks's motion to confirm the second-phase arbitration award and defendants' motions to vacate the award. The court reaffirmed that the arbitrator had jurisdiction over the defendants and over the claims. Additionally, the court rejected defendants' argument that the arbitrator manifestly disregarded the law in many ways, including disregarding the Tennessee parol evidence rule and statute of frauds by validating the oral side

agreement;[1] deciding the issue of Mr. Hicks's criminal liability for bank fraud; granting Mr. Hicks's motion to amend his claims to conform to the evidence; misapplying the Tennessee anti-Strategic Lawsuits Against Political Participation statute, Tenn. Code Ann. § 4-21-1003; concluding Mr. Hicks suffered severe emotional distress; and awarding punitive damages. The court, however, vacated the award of post-award, prejudgment interest, concluding that the arbitrator manifestly disregarded the clear, controlling Tennessee law of *Francois v. Willis*, 205 S.W.3d 915, 916 (Tenn. Ct. App. 2006), which held that prejudgment interest cannot be awarded in personal injury actions. On August 6, the district court denied Mr. Cadle's motion for reconsideration.

On October 7, 2008, the district court granted Mr. Hicks's motion for entry of judgment and certification under Fed. R. Civ. P. 54(b) of the October 26, 2005 order confirming Arbiter Hinga's final arbitration award and the July 23, 2008 order confirming Arbiter Dubofsky's final arbitration award in all aspects other than the award of post-award, prejudgment interest. The court entered final judgment pursuant to Rule 54(b) on October 10, and denied Mr. Cadle's motion for reconsideration on October 22.

---

[1] The note provided, and the parties agree, that Tennessee law applies.

Defendants appeal from various orders. We consolidated their appeals, Nos. 08-1306, 08-1307, and 08-1429. Mr. Hicks cross appeals the portion of the order denying post-award, prejudgment interest in No. 08-1435.[2]

## II. DISCUSSION

In their appeals, defendants raise several arguments: (1) the arbitrator lacked jurisdiction to consider the second-phase claims; (2) they are not judicially estopped from asserting that the arbitrator lacked jurisdiction; (3) even if the arbitrator had jurisdiction, he acted outside the scope of his authority; (4) the district court should not have confirmed the arbitration award because the arbitrator manifestly disregarded the law and violated public policy; and (5) the district court failed to apply the proper deferential standard of review. We discuss each of these arguments in turn, rejecting each. After that discussion we consider Mr. Hicks's cross-appeal. He argues that the district court misapplied Tennessee post-award, prejudgment interest law when denying him interest. We agree, and we remand for the district court to amend the judgment to include interest.

---

[2]    On October 17, 2007, the district court allowed Mr. Hicks to file a supplemental complaint pertaining to alleged conduct by Mr. Cadle, The Cadle Company, and Buckeye occurring after the second-phase award. The court referred those claims for arbitration. This third phase of arbitration is not part of this appeal.

A.  The arbitrator had jurisdiction to consider the second-phase claims.

Defendants first argue that the arbitrator lacked jurisdiction over them when he arbitrated the second-phase claims.  We review the question of arbitrability de novo.  *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1513 (10th Cir. 1995).

As the parties are well aware, we begin with the strong federal policy, evinced by the FAA, in favor of arbitration for resolving disputes.  *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995).  But "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1174 (10th Cir. 2006) ("Arbitrators derive their authority from the parties' arbitration agreement.").  Because "arbitration is a matter of contract, . . . a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."  *ARW Exploration Corp.*, 45 F.3d at 1460 (quotation marks and brackets omitted).  If a contract has a broad, sweeping arbitration clause, it is presumed that disputes will be arbitrated.  *Id.* at 1462.  A party may overcome this presumption "only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).  We resolve any doubts in favor of arbitrability.  *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190,

209 (1991); *Hollern*, 458 F.3d at 1173 ("In assessing the scope of the arbitrators' authority, we are mindful of the strong presumption requiring all doubts concerning whether a matter is within the arbitrators' powers to be resolved in favor of arbitrability.").

Defendants argue that they and Mr. Hicks never had a meeting of the minds to arbitrate the second-phase claims concerning the letters. They point out that Mr. Hicks only agreed to arbitrate the first-phase claims, which arose when Buckeye held the note, and he did not agree to arbitrate the claims related to bank fraud asserted in the letters, which arose after Bank of America reacquired the note and he had been relieved of any liability under the note. Defendants contend that the second-phase arbitration claims therefore did not arise between or among the parties as the note's arbitration clause required. Thus, they assert that arbitration was improper because they were not parties to the note, all second-phase claims asserted in the second phase of arbitration occurred after Mr. Hicks had been released from liability under the note, and the arbitration clause of the note did not provide a basis for arbitration jurisdiction over defendants for the new tort claims.

We agree with the district court that the second-phase claims were within the jurisdiction of the arbitrator. The note's arbitration clause applied to all controversies arising out of and related to the note. *See* Aplt. App., Vol. I at 110. The note was binding on Bank of America's successors. *See Hicks*, 218 F. App'x

at 746.  Defendants' tortious actions are directly tied to the note.  Defendants engaged in a continuous course of wrongful conduct all arising from a note with a broad arbitration clause.  *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998) (recognizing that "when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute[,] even if the facts of the dispute occurred after the contract expired").

Also, defendants contend that Mr. Shaulis and Mr. Cadle were never parties to the note.  While this is true, they joined the motion for a stay and requested that all claims be decided by arbitration.  Also, under the circumstances presented here, the two are bound by the arbitration clause as agents of The Cadle Company and Buckeye.  *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, *Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (following policy favoring arbitration, court decided that nonsignatories of arbitration agreement can be bound under agency principles).

B.  The defendants are judicially estopped from asserting arbitral jurisdiction.

Defendants argue that they did not waive their right to have the second-phase claims tried in court.  They contend that although they joined in Bank of America's stay motion, they did not move to have the lawsuit dismissed, since the lawsuit claims were intertwined with the arbitration claims.

The district court held that defendants were judicially estopped from contesting arbitral jurisdiction.  In our decision affirming the first phase of arbitration, we noted that defendants waived any objection to arbitration and were estopped from asserting that the arbitrator lacked jurisdiction because they had stated, when they joined Bank of America's motion for stay, that this action must be arbitrated.  *See Hicks*, 218 F. App'x at 746.  This is the law of the case.  See *Homans v. City of Albuquerque*, 366 F.3d 900, 904 (10th Cir. 2004) ("In general, the law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quotation omitted)).

To the extent that all of defendants' objections to judicial estoppel were not before us in the prior appeal, we conclude, based on defendants' request for arbitration of the claims raised in the amended complaint, that they are judicially estopped from asserting that the arbitrator lacked jurisdiction over this appeal.

-13-

*See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (discussing judicial estoppel).

C.  The arbitrator acted within the scope of his authority.

Even if the arbitrator had jurisdiction over the claims asserted in the amended complaint, defendants contend that he went beyond the scope of those claims by awarding damages in favor of Mr. Hicks for defamation and intentional infliction of emotional distress due to fourteen subsequent acts by them, for defamation because of the accusation that Mr. Hicks committed perjury, and for alter ego liability.  Also, defendants contend that the arbitrator improperly awarded punitive damages even though Mr. Hicks had never requested them.  We conclude that under the broad arbitration clause, the arbitrator acted within his jurisdiction.

The arbitrator had discretion to allow Mr. Hicks to amend his statement of claims to conform to the evidence.  *See United Steelworkers of Am. v. Ideal Cement Co.*, 762 F.2d 837, 841 (10th Cir. 1985) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (recognizing that procedural matters are within discretion of arbitrator).  The assertion that Mr. Hicks committed perjury by arguing that he did not commit bank fraud directly relates to the issues in arbitration and therefore was within the arbitrator's authority to arbitrate.  Also, "there was abundant evidence before the arbitrator that [The Cadle Company] and Buckeye operated as alter-egos." *Hicks*, 218 F. App'x at 746.

-14-

Likewise, the arbitrator acted within his jurisdiction by considering whether to award punitive damages. Under Tennessee law, punitive damages need not be specifically pleaded in the complaint. *See Allen v. Melton*, 99 S.W.2d 219, 226 (Tenn. Ct. App. 1936). Rather, "a court may . . . award punitive damages . . . if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). In his amended complaint, Mr. Hicks contended that defendants acted maliciously, intentionally, willfully, recklessly, and outrageously. Aplt. App., Vol. II at 18-20. In awarding punitive damages, the arbitrator found these contentions to be true.

Additionally, we note that Mr. Hicks asked for punitive damages in his statement of claims filed eighteen months before the second-phase arbitration hearing. *Id.*, Vol. I at 71. Yet defendants never asserted that punitive damages should not be at issue until after all of the evidence had been presented to the arbitrator.[3]

> D. The District Court correctly confirmed the arbitration award, because the arbitrator neither manifestly disregarded the law nor violated public policy.

Next, defendants argue that the district court erred in confirming the arbitration award because the arbitrator manifestly disregarded the law and

---

[3] Because, as discussed earlier, the district court correctly determined that this case should be decided by arbitration, we reject defendants' argument that the district court denied them a jury trial.

violated public policy.  When reviewing a district court's decision to confirm or vacate an arbitration award, we review legal questions de novo and factual findings for clear error.  *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001).  We owe no deference to the district court's decision.  *See ARW Exploration Corp.*, 45 F.3d at 1462.  But we afford great deference to the arbitrator's decision.  *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005).  Our review is "strictly limited," and "this highly deferential standard has been described as among the narrowest known to the law." *Bowen*, 254 F.3d at 932 (quotation marks omitted).

We have held consistently that we may vacate an arbitration award only under the limited circumstances set forth in the FAA, 9 U.S.C. § 10,[4] or under

---

[4]     Under § 10, we may vacate an arbitration award

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of the party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(continued...)

certain judicially-created exceptions, such as an arbitrator's manifest disregard for the law or for a violation of public policy.  *See, e.g.*, *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1150 (10th Cir. 2007); *Hollern*, 458 F.3d at 1172; *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001); *Bowen*, 254 F.3d at 932 & n.3; *see also, e.g.*, *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 827 (10th Cir. 2005) (listing statutory grounds for vacatur and recognizing that Supreme Court has held that vacatur is proper when arbitrator manifestly disregards law); *U.S. Energy Corp.*, 400 F.3d at 830 (stating that "arbitral award is subject to reversal only if it evinces a 'manifest disregard' of the law"); *Jenkins v. Prudential-Bache Sec., Inc.*, 847 F.2d 631, 633-34 (10th Cir. 1988) ("[F]ederal courts have never limited their scope of review to a strict reading of [§10].  Viewed either as an inherent appurtenance to the right of judicial review or as a broad interpretation of [§ 10(d)] prohibiting arbitrators from exceeding their powers, the arbitration award has traditionally been subjected to a short of 'abuse of discretion' standard.").

Last year, the Supreme Court held in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 1400, 1401, 1403, 1404 (2008), that the FAA sets forth the exclusive grounds for vacating or modifying an arbitration

---

[4](...continued)
9 U.S.C. § 10(a).

award under the FAA, 9 U.S.C. §§ 10 and 11.[5]  The Court rejected Hall Street

Associates' assertion that *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953),

recognized manifest disregard of the law as an independent basis for vacatur

beyond § 10.  *Hall Street Assocs.*, 128 S. Ct. at 1403-04.  Instead, the Court noted

that the issue was not directly presented in *Wilko* and the language of *Wilko* is

vague:

> Maybe the term "manifest disregard" was meant to name a new
> ground for review, but maybe it merely referred to the § 10 grounds
> collectively, rather than adding to them.  Or, as some courts have
> thought, "manifest disregard" may have been shorthand for
> § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the
> arbitrators were "guilty of misconduct" or "exceeded their powers."

*Hall Street Assocs.*, 128 S. Ct. at 1404 (citations omitted).  The Court, therefore,

decided that the text of the FAA "compels a reading" that the statute sets forth

exclusive grounds for review.  *Id.*

---

[5]  The question in *Hall Street Associates*, 128 S. Ct. at 1400-01, was whether a contract may supplement the statutory grounds for vacatur or modification of an arbitration award set forth in 9 U.S.C. §§ 9-11 to allow the federal court to review de novo the legal conclusions of the arbitrator.  The Court refused to expand the detailed categories of §§ 10 and 11, which set forth "extreme arbitral conduct," to "review for just any legal error."  *Hall St. Assocs.*, 128 S. Ct. at 1404-05.

We have not addressed whether judicially-created grounds for vacatur survive after *Hall Street Associates*.[6]  Other courts, however, have addressed the issue and have reached differing conclusions.

Some courts have decided that manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA.  *See, e.g., Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 350, 355 (5th Cir. 2009) ("*Hall Street* unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA.  Our case law defines manifest disregard of the law as a *nonstatutory* ground for vacatur.  . . .   Thus, to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA."); *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008) (acknowledging in dicta holding in *Hall Street Associates* "that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal

---

[6]     In *Youngs v. American Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008), we did not cite *Hall Street Associates*.  But we required the party seeking to vacate the arbitration award "to show that one of the limited statutory grounds exists for setting aside the arbitration result." *Youngs*, 537 F.3d at 1141 (citing to both Utah and federal law).  The issue of the applicability of the manifest disregard doctrine was not at issue or addressed.

And in *DMA International, Inc. v. Qwest Communications International, Inc.*, 585 F.3d 1341, 2009 WL 3627941, at *2 & n.2 (10th Cir. Nov. 4, 2009), we declined to decide whether manifest disregard remains valid law.  Instead, we decided that "the arbitrator did not act with manifest disregard of the law or in any other way that would justify vacatur" of the arbitrator's award. *Id.* at *2 n.2.

Arbitration Act"); *see also AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1271 (11th Cir. 2009) (noting that *Hall Street Associates* "confirmed[ that §§] 10 and 11 of the FAA offer the exclusive grounds for expedited vacatur or modification of an award under the statute"); *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) ("It is true that we have said that 'manifest disregard of the law' may supply a basis for *vacating* an award, at times suggesting that such review is a 'judicially created' supplement to the enumerated forms of FAA relief. . . . *Hall Street's* reference to the 'exclusive' statutory grounds for obtaining relief casts some doubt on the continuing vitality of that theory. But either way, we have used the 'manifest disregard' standard only to vacate arbitration awards, not to modify them."), *cert. denied*, 130 S. Ct. 96 (2009); *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008) (citing *Hall Street Associates* and stating that "[a]n arbitral award may be vacated only for the reasons enumerated in the FAA").

The Second Circuit has recognized that *Hall Street Associates* held that the statute sets forth exclusive grounds for vacating arbitration awards, but, nonetheless, decided that manifest disregard is a "judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, [and therefore] remains a valid ground for vacating arbitration awards." *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *cert. granted*, 129 S. Ct. 2793

-20-

(2009).[7]  In reaching this conclusion, the Second Circuit realized that this holding conflicted with dicta in its prior cases treating manifest disregard as a ground for vacatur separate from the grounds listed in the FAA.  *Id.*  Further, the Second Circuit decided that the Supreme Court did not entirely abrogate the manifest-disregard doctrine, since the Court "speculated" that manifest disregard referred to the § 10 grounds.  *Id.* at 94-95.

The Ninth Circuit has held that manifest disregard remains a valid ground for vacatur in that circuit because it had already treated manifest disregard as a part of § 10(a)(4).  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 145 (2009).  The court joined the Second Circuit in its interpretation of *Hall Street Associates*.  *Comedy Club*, 553 F.3d at 1290 (citing *Stolt-Nielsen*).

We need not decide whether § 10 provides the exclusive grounds for vacating an arbitrator's decision, because defendants demonstrate neither manifest disregard of the law nor violation of public policy.  "Manifest disregard of the law has been defined as willful inattentiveness to the governing law.  To warrant setting aside an arbitration award based on manifest disregard of the law, the record must show the arbitrators knew the law and explicitly disregarded it."

---

[7]    Certiorari was granted on an unrelated question:  "Whether imposing class arbitration on parties whose arbitration clauses are silent on that issue is consistent with the" FAA.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 2009 WL 797583 (certiorari petition).

-21-

*Hollern*, 458 F.3d at 1176 (quotation marks omitted). Further, the public policy exception applies only to contract disputes; it does not apply to tort claims. *Bowen*, 254 F.3d at 932 n.3.

According to defendants, they had a good-faith basis to ask the Colorado and Tennessee attorneys general to investigate bank fraud, yet the arbitrator acted in manifest disregard of the law and in violation of public policy by deciding that there was no bank fraud without considering the good-faith issue. Under Tennessee law, the issue in defamation cases is what a reasonably prudent person would have done to ascertain the truth or falsity of a communication. *Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 574-75 (Tenn. Ct. App. 1996). The arbitrator did not disregard this law, as he specifically determined that defendants' actions were unreasonable.

In addition, defendants argue that the arbitrator manifestly disregarded Tennessee law indicating that there can be no liability for reporting financial fraud to a government agency or for communicating matters of concern to government agencies. *See* Tenn. Code Ann. §§ 39-14-909, 4-21-1002(a). Rather, they contend the arbitrator disregarded this law and imposed an obligation on them to prove bank fraud by a preponderance of the evidence before making a report to a government agency.

Arbiter Dubofsky decided that the Tennessee anti-SLAPP statute did not provide immunity because defendants reported bank fraud to retaliate against

-22-

Mr. Hicks; they negligently and recklessly failed to investigate; they falsely, recklessly, and negligently accused Mr. Hicks of committing crimes; and Mr. Cadle admitted there was no bank fraud. *See id.* § 4-21-1003(b) (stating anti-SLAPP immunity does not apply if person providing information knew it was false, communicated information in reckless disregard of its falsity, or acted negligently in failing to determine if the information was false). Likewise, Arbiter Dubofsky decided that defendants did not have a reasonable subjective or objective belief that Mr. Hicks perjured himself. Defendants therefore have failed to show a manifest disregard of the law.

Defendants also claim that the arbitrator manifestly disregarded the law by (1) validating the oral side agreement and determining there was no bank fraud and (2) deciding that they were liable for defamation even though the letters to the attorneys general were not defamatory since there was not a single false statement in them. In these arguments, defendants are merely disagreeing with the arbitrator's decision. These, therefore, are not reasons to vacate the arbitrate award for a manifest disregard of the law.

Further, defendants argue that the arbitrator improperly awarded damages based on Mr. Cadle's alleged attacks upon others. Evidence of attacks on others, namely Arbitrator Hinga and Mr. Hicks's counsel, is relevant to show that defendants intended to harm Mr. Hicks. *See Phillip Morris USA v. Williams*, 549 U.S. 346, 355, 357 (2007) (deciding evidence of harm to others is relevant to

-23-

show reprehensibility, but cannot be used to punish defendant for harms to nonparties).

Finally, defendants argue that the arbitrator exceeded his powers and manifestly disregarded the law by assessing punitive damages against them when Mr. Hicks never sought punitive damages. We have already determined that the arbitrator acted within the scope of his authority, and as a result, we reject the contention.

E. The district court applied the proper deferential standard of review.

Defendants argue that the district court improperly made an independent inquiry into the underlying facts of the case and validated the arbitrator's finding that Mr. Hicks had an oral side agreement with a Bank of America employee that contradicted the terms of the note. According to defendants, the district court was limited to deciding whether the arbitrator manifestly disregarded the law.

It is true, as defendants argue, that courts may not independently review an arbitrator's decision on the merits, even when there are allegations of factual errors and misinterpretation of the parties' agreement. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Bowen*, 254 F.3d at 932. But our review of the district court's order convinces us that the district court did not find facts or specifically validate Arbitrator Dubofsky's rulings. Instead, the court merely recited the facts and confirmed the arbitrator's decision, all while applying the proper deferential standard of review.

-24-

F.  The district court misapplied Tennessee law on post-award prejudgment interest.

On cross appeal, Mr. Hicks argues that under Tennessee law he is entitled to post-award, prejudgment interest in the amount of $394,119.51 on the two final arbitration awards.  He contends the district court denied this interest based on an erroneous interpretation of Tennessee law that post-award, prejudgment interest is not recoverable on personal injury verdicts.  Because the arbitration awards were meant to compensate him as of the dates they were issued, Mr. Hicks maintains that he should be granted post-award, prejudgment interest that would compensate him for the delay between the award and its confirmation and entry of judgment.

State law applies when determining the issue of prejudgment interest.  *See Strickland Tower Maint., Inc. v. AT&T Commc'ns, Inc.*, 128 F.3d 1422, 1429 (10th Cir. 1997).  We review the district court's interpretation of state law de novo.  *Beardsley v. Farmland Co-Op, Inc.*, 530 F.3d 1309, 1313 (10th Cir. 2008).

The district court decided and the Tennessee law is clear that prejudgment interest may not be awarded in personal injury actions.  *See Francois*, 205 S.W.3d at 916.  But the court did not recognize that principles of equity also govern when awarding prejudgment interest in a Tennessee case.  *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  In deciding whether an award is equitable under the circumstances of the particular case, "a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of

the use of funds to which he . . . was legally entitled, not to penalize a defendant for wrongdoing." *Id.* The certainty of a claim is "one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances." *Id.* at 928; *see also id.* ("[T]he more clear the fact that the plaintiff is entitled to compensatory damages, the more clear the fact that the plaintiff is also entitled to prejudgment interest as part of the compensatory damages."). Prejudgment interest is "based on the recognition that a party is damaged by being forced to forego the use of its money over time." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 82 (Tenn. Ct. App. 2000).

Mr. Hicks is not seeking prejudgment interest for the period of time prior to the arbitrators' awards. *See Louisville & N. R.R. v. Wallace*, 17 S.W. 882, 883 (Tenn. 1891) (deciding award was "measure of recovery" in personal injury action). Instead, he seeks the interest from the time of the arbitration awards until the entry of judgment. This interest would compensate him for the loss of the use of the money after its award. Here, the lengthy delay between the time of the arbitrators' awards and the entry of judgment justifies an award of post-award, prejudgment interest. *See Lawson v. State*, No. 03A01-9806-BC-00185, 1998 WL 880931, at *3 (Tenn. Ct. App. Dec. 17, 1998) (unpublished). We must reverse and remand this claim to the district court.

## III. CONCLUSION

We AFFIRM the district court's judgment confirming the arbitration awards and REVERSE the district court's vacatur of post-award, prejudgment interest.   We REMAND to the district court to amend its judgment to award post-award, prejudgment interest of $394,119.51.

Entered for the Court


Robert H. Henry
Chief Circuit Judge